CONSUMER LAW OFFICE OF WILLIAM E. KENNEDY
WILLIAM E. KENNEDY (CSB #158214)
wkennedy@kennedyconsumerlaw.com
2797 Park Avenue, Suite 201
Santa Clara, CA 95050
(408) 241-1000 -TEL
(408) 241-1500 – FAX

Robert David Humphreys (*Pro Hac Vice* Application pending)
david@hwh-law.com
Lucius James Wallace
luke@hwh-law.com (*Pro Hac Vice* Application pending)
Humphreys Wallace Humphreys, P.C.
9202 S. Toledo Avenue
Tulsa, OK 74137
(918) 747-5300 Telephone
(918) 747-5311 Facsimile

WILLIAM PURDY (CSB #96027)
LAW OFFICE OF SIMMONS & PURDY
2425 Porter Street, Suite 10
Soquel, CA 95073
(831) 464-6884
(831) 464-6886 fax
bill@@pamelaw.com

Attorneys for Plaintiff Patricia McFaul

**Filed**

NOV 6 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA MCFAUL, an individual | Case No.: CV 12-05685 PSG |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, SLANDER OF TITLE, AND INTRUSION UPON SECLUSION** |
| vs. | |
| BANK OF AMERICA, N.A. | |
| Defendant. | **JURY TRIAL DEMANDED** |

COMPLAINT AND JURY TRIAL DEMAND – McFaul v. Bank of America - 1

## INTRODUCTION

1. This is an action brought by PATRICIA MCFAUL in response to Bank of America's harassing collection campaign, which included the initiation of the foreclosure process, when it did not have any lien or other interest in her property. Bank of America's acts constitute slander of title, intrusion upon seclusion and violation of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788.17.

## JURISDICTION AND VENUE

2. Jurisdiction is proper in the Federal District Court. Plaintiff is a citizen of the state of California. Defendant Bank of America, N.A., is a national banking association with its principal place of business in North Carolina. Plaintiff's claims are in excess of $75,000.00 exclusive of interest, costs and attorney fees. Diversity jurisdiction is invoked by Plaintiff under 28 USC § 1332(a).

3. Venue is proper in the Federal District Court of the Northern District of California pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

4. Ms. McFaul is a natural person who resides in Watsonville, CA, in Santa Cruz County.

5. At all material times, BANK OF AMERICA, N.A. ("Bank of America") was a national bank engaged in the business of lending and servicing mortgages to consumers.

## FACTS RELATING TO PATRICIA MCFAUL

6. In 2005, Ms. McFaul took out a refinance mortgage loan from Preferred Mortgage Banking in Capitola, California. The loan was serviced by Countrywide Home Loans. During the loan process, Preferred Mortgage Banking violated the Truth in Lending Act by failing to comply with

15 U.S.C. §1635, which sets forth the requirements concerning the three-day cancellation right. Ms. McFaul sought out legal counsel to challenge the violation of the Truth in Lending Act.

7. In 2009, a settlement was reached with Countrywide Home Loans whereby the mortgage loan was rescinded. On August 31, 2009, Bank of America, acting through its agent and trustee Recontrust Company, N.A. recorded a reconveyance pursuant to the settlement agreement.

8. In connection with the agreement to rescind the loan, Ms. McFaul obtained a mortgage loan from Union Bank to refinance the loan on her property using the proceeds to fund the amount due to pay off the rescinded Countrywide Home loan.

9. In approximately May 2009, Bank of America acquired Countrywide and all further actions concerning the account were taken by Bank of America.

10. After the rescission and payoff of the mortgage loan, Bank of America sent Ms. McFaul monthly statements indicating that she was in default on her mortgage notwithstanding the fact that it had been rescinded and paid off. The monthly statements commenced by December 2009 and continued until at least January 2012.

11. Ms. McFaul began receiving frequent telephone calls from Bank of America. On approximately six occasions, she spoke to Bank of America personnel, each of whom demanded payment. Each time, Ms. McFaul explained that she no longer had a loan with Bank of America due to the rescission. On each occasion, the Bank of America personnel would not accept, or investigate Ms. McFaul's explanation. Rather, the Bank of America personnel simply continued to press Ms. McFaul for payment. After these several unsuccessful attempts to explain to Bank of America that she did have a loan with them, Ms. McFaul stopped picking up the phone when Bank of America called. In all, Bank of America called Ms. McFaul well over one hundred times.

12. Plaintiff is informed and believes, and thereon alleges, that defendant's customer service system was designed such that the customer service personnel were not trained, expected to and/or authorized to give credit to disputes such as that presented by Ms. McFaul, such that it was inevitable that defendant would continue its wrongful collection activities despite being told multiple times by Ms. McFaul that she held no Bank of America loan. Plaintiff is further informed and believes, and thereon alleges that the customer service system was designed, created, approved and ratified by defendant's managing agents, directors, or officers.

13. On or about February 17, 2011, Ms. McFaul received three identical communications from Bank of America which outlined the process for obtaining a modification of her loan. Ms. McFaul received another of these communications on or about March 16, 2012.

14. At one point a courier who appeared to be from Bank of America delivered documents to Ms. McFaul. She explained to him that she had no loan with Bank of America. The courier asked if Bank of America could continue to call her about the alleged loan. Ms. McFaul again explained that the loan was rescinded and said that Bank of America could not continue to call her.

15. On or about March 14, 2012, Ms. McFaul received a "Notice of Default and Election To Sell Under Deed of Trust" ("Notice of Default") which Recontrust Company, N.A, acting as agent and trustee of Bank of America, recorded against her property.

16. At or near the same time as receiving the Notice of Default, Ms. McFaul received a "Debt Validation Notice" which included a statement that Ms. McFaul owed $36,218.98 to Bank of America, and additionally stated: "Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater."

17. In response to the Notice of Default, Ms. McFaul went to Union Bank, which held her mortgage to ask if Bank of America could foreclose on her house. She was told that Union Bank, not Bank

of America held the first position and that they did not see how Bank of America could foreclose on her loan. Union Bank advised Ms. McFaul to check the county property records. Ms. McFaul went to the Santa Cruz County Recorder's office and confirmed that a Notice of Default had been recorded.

18. Ms. McFaul then called Recontrust and explained that she had no loan with Bank of America. She was referred to the foreclosure department at Bank of America. When she connected with the foreclosure department, she spent several hours on the telephone. She spoke first to a gentleman who, after hearing from Ms. McFaul that her mortgage had been rescinded, stated "I believe you." However, the gentleman then turned the call over to Tamara Lloyd. Ms. Lloyd kept Ms. McFaul on the phone for several hours, coming back approximately every fifteen minutes to state that she was looking into the matter. At the end of the conversation, Ms. Lloyd, in an abusive and accusatory tone, told Ms. McFaul that she owed the money which Bank of America was attempting to collect, and that her home was in foreclosure. Ms. Lloyd expressed outrage that Ms. McFaul had been making payments to Union Bank, rather than Bank of America, and demanded that Ms. McFaul send her copies of cancelled checks and statements from Union Bank. Ms. Lloyd pressured Ms. McFaul to make a payment immediately by pressing her to give her credit card or checking account number.

19. Plaintiff is informed and believes that at no time did any Bank of America employee review the title history, which review would have quickly revealed that Bank of America had reconveyed the title to Ms. McFaul's property some years prior. Plaintiff is further informed and believes that at no time did Bank of America review Bank of America's internal records to ascertain whether Ms. McFaul's loan had in fact been paid off when it was rescinded.

COMPLAINT AND JURY TRIAL DEMAND – McFaul v. Bank of America - 5

20. Because a Notice of Default had been recorded against Ms. McFaul, she began receiving several correspondences from various businesses advertising various foreclosure-related services such as foreclosure defense and bankruptcy.

21. Ms. McFaul contacted Simmons & Purdy, the law firm which had assisted her with the rescission. Ms. McFaul paid $1,800.00 in attorney's fees for the firm to challenge the threatened foreclosure of her home.

22. Simmons & Purdy made contact to Bank of America and requested that they cease and desist the foreclosure process.

23. Ms. McFaul became aware of the timing of the foreclosure process whereby banks could record a Notice of Trustee's Sale approximately three months after the Notice of Default was recorded, and hold the foreclosure sale approximately 21 days thereafter. Accordingly, Ms. McFaul expected a foreclosure date to be set in mid-June, 2012

24. Bank of America recorded a cancellation of the Notice of Default on April 5, 2012, but did not inform Ms. McFaul or her attorneys, and thus Ms. McFaul's fear and anxiety concerning the impending loss of her house continued. Ms. McFaul's attorneys did not learn that the Notice of Default had been cancelled until early June 2012.

25. Notwithstanding that it had cancelled the Notice of Default, on June 18, 2012, Bank of America sent a notice to Ms. McFaul informing her that her loan payment had been adjusted, indicating that Bank of America continues to take consider the non-existent loan to be due and owing.

26. On or about June 29, 2012, a man came to Ms. McFaul's house asking for her. As Ms. McFaul was not at home, her daughter and son-in-law answered the door. The man acknowledged that he was from Bank of America. He appeared to be reviewing Ms. McFaul's property for unknown reasons.

27. Defendant's collection campaign, and its recording of the Notice of Default, and the fear of losing her home has imposed emotional distress upon Ms. McFaul including nervousness, anxiety, sleeplessness, agitation, and stress.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
**(Violation of Rosenthal Fair Debt Collection Act, Civil Code §1788 et seq.)**

28. Plaintiff incorporates all other paragraphs as though fully set forth herein.

29. Defendant Bank of America is a "debt collector" within the meaning of Civil Code §1788.2(c). The monies which defendant seeks to collect from plaintiff is a "debt" within the meaning of Civil Code §1788.2(d).

30. Defendant Bank of America, as alleged above, represented to plaintiff that her alleged debt could be increased by finance charges and other charges when no such charges could be assessed, in violation of Civil Code § 1788.13(e).

31. The debt collection practices of defendant violated other provisions of the Rosenthal Fair Debt Collection Practices Act, including to but not limited to the following:

32.  a.   Civil Code §1788.17, which incorporates by reference, and requires compliance with the provisions of the federal FDCPA, including:

   i.   15 U.S.C. §1692e, which prohibits any false, deceptive or misleading representation or means in connection with the collection of any debt;
   ii.  15 U.S.C. §1692e(2)(A), which prohibits misrepresentation of the character, amount, or legal status of the debt;
   iii. 15 U.S.C. §1692e(10), which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt;
   iv.  15 U.S.C. §1692f, which prohibits any unfair or unconscionable means to collect or attempt to collect any debt;
   v.   15 U.S.C. §1692f(1), which prohibits the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

33. As a result of defendant's violations of the Rosenthal FDCPA, Ms. McFaul suffered emotional distress.

## SECOND CAUSE OF ACTION
### (Slander of Title)

34. Plaintiff incorporates all other paragraphs as though fully set forth herein.

35. Bank of America wrongfully recorded a Notice of Default with the Santa Cruz County Recorder's Office, when it held no lien on Ms. McFaul's property and Ms. McFaul had no loan with Bank of America. At the time the Notice of Default was filed, Ms. McFaul had notified Bank of America of its position numerous times but Bank of America failed to give credit to Ms. McFaul's statements. Despite being informed repeatedly that the loan had been paid off, Plaintiff is informed and believes that at no time did any Bank of America employee review the land records or even a summary of them, which review would have quickly revealed that Bank of America had reconveyed the title to Ms. McFaul's property some years prior. Plaintiff is further informed and believes that at no time did Bank of America review Bank of America's internal records to ascertain whether Ms. McFaul's loan had been rescinded and paid off and the lien released.

36. Accordingly, Defendant's recording of the Notice of Default was done with malice, i.e., a reckless and conscious disregard of Ms. McFaul's rights.

37. Ms. McFaul was forced to retain and pay legal counsel in order to force Bank of America to cease the foreclosure process and cancel the Notice of Default.

## THIRD CAUSE OF ACTION
### (Intrusion Upon Seclusion)

38. Plaintiff incorporates all other paragraphs as though fully set forth herein

39. Plaintiff had a reasonable expectation of privacy.

40. Defendant's wrongful process is designed to be and is intrusive, invasive and disturbing.

COMPLAINT AND JURY TRIAL DEMAND – McFaul v. Bank of America - 8

41. Defendant intentionally intruded in Plaintiff's privacy by, despite the fact that plaintiff owed Defendant nothing, barraging Plaintiff with repeated telephone calls, as well as numerous statements and letters. During the collection campaign, defendant ignored Ms. McFaul's repeated statements that her loan had been rescinded and paid off. As alleged herein, the collection campaign included Defendant initiating the foreclosure process by recording and serving a Notice of Default upon Ms. McFaul.

42. Defendant's intrusion would be highly offensive to a reasonable person and was highly offensive to Ms. McFaul.

43. Ms. McFaul was harmed by Defendant's conduct insofar as she felt harassed by Defendant's relentless collection pursuits, and feared that Defendant would foreclose on her home.

44. Defendant's actions were a substantial cause in causing Plaintiff's harm.

45. Defendant intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting this debt and thereby invading and intruding upon Plaintiff's right to privacy.

46. Defendant acted with malice, fraud and/or oppression, warranting exemplary and/or punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully prays for judgment against defendant and relief as follows:

<u>On the First Cause of Action (Rosenthal FDCPA)</u>

  a. for actual damages pursuant to California Civil Code § 1788.30(a) and 15 U.S.C. § 1692k(a)(2)(A) (incorporated into the Rosenthal FDCPA by Civil Code §1788.17);

  b. for statutory damages pursuant to California Civil Code § 1788.30(b);15 U.S.C. §1692k(a)(2)(B) (incorporated into the Rosenthal FDCPA by Civil Code §1788.17);

c.  for prejudgment interest if allowed by law;

d.  for reasonable attorneys fees and costs pursuant to 15 U.S.C. §1692k(a)(3) (incorporated into the state FDCPA by Civil Code §1788.17) and Civil Code §1788.30(c); and

e.  for such other and further relief as the Court may deem proper.

On the Second Cause of Action (Slander of Title)

a.  for actual damages;

b.  for prejudgment interest if allowed by law;

c.  for punitive damages; and

d.  for such other and further relief as the Court may deem proper.

On the Third Cause of Action (Intrusion Upon Seclusion)

a.  for actual damages;

b.  for prejudgment interest if allowed by law;

c.  for punitive damages; and

d.  for such other and further relief as the Court may deem proper.

Dated: November 6, 2012

Respectfully Submitted,

CONSUMER LAW OFFFICE OF WILLIAM E. KENNEDY
HUMPHREYS WALLACE HUMPHREYS, P.C.
LAW OFFICE OF SIMMONS & PURDY

By: /s/ William E. Kennedy
WILLIAM E. KENNEDY
Attorneys for Plaintiff PATRICIA MCFAUL

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury in this action.

Dated: November 6, 2012

Respectfully Submitted,

CONSUMER LAW OFFFICE OF WILLIAM E. KENNEDY
HUMPHREYS WALLACE HUMPHREYS, P.C.
LAW OFFICE OF SIMMONS & PURDY

By: *(signature)*
WILLIAM E. KENNEDY
Attorneys for Plaintiff PATRICIA MCFAUL