UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA MCFAUL,<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 5:12-cv-05685-PSG<br><br>**ORDER GRANTING-IN-PART BANK OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT PRECLUDING AN AWARD OF PUNITIVE DAMAGES**<br><br>**(Re: Docket No. 67)** |

In this case Plaintiff Patricia McFaul brings underlying claims for (1) slander of title, (2) intrusion on seclusion, (3) violation of the Rosenthal Fair Debt Collection Act, and (4) California Consumer Credit Reporting Act.[1]  Before the court is Defendant Bank of America, N.A.'s motion for partial summary judgment precluding an award of punitive damages in this case. McFaul opposes.  After reviewing the arguments, the court GRANTS-IN-PART Bank of America's motion.[2]

---

[1] *See* Docket No. 67 at ¶¶ 28-54.

[2] The court also GRANTS Defendant's unopposed request to amend its answer.  *See* Docket No. 68 at 10 ("BANA is seeking leave to file an amended answer to the FAC.  Plaintiff represents she has no objection to BANA's proposed Amended Answer.").

1
Case No. 5:12-cv-05685-PSG
ORDER GRANTING-IN-PART BANK OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT PRECLUDING AN AWARD OF PUNITIVE DAMAGES

# I. BACKGROUND

## A. McFaul Alleges A Campaign of Harassment

McFaul has lived in her Watsonville home since 1991.[3] In 2005, McFaul refinanced the loan on her home with Preferred Mortgage Banking.[4] The note was serviced by Countrywide, which was later acquired by Bank of America.[5]

McFaul subsequently alleged that Preferred Mortgage Banking violated the Truth in Lending Act ("TILA") by making false representations. In 2009 the parties settled McFaul's claim and entered a release agreement. As part of that agreement, Bank of America rescinded the loan pursuant to the TILA.[6] Under the rescission agreement, McFaul was required to make a payment of $300,193.98, which she accomplished by obtaining a loan from Union Bank.[7] Unfortunately, the full payoff was mischaracterized as a "partial payment" which left the loan unsatisfied.[8] The mischaracterization triggered a "harassing collection campaign, which included the initiation of the

---

[3] *See* Docket No. 75 at ¶ 3 ("I have lived at 622 McKenzie Avenue, Watsonville, California since 1991.").

[4] *See* Docket No. 75 at ¶ 4 ("In 2005, I refinanced the mortgage loan on my home with Preferred Mortgage Banking."); Docket No. 67-2, Ex. A.

[5] *See* Docket No. 74, Ex. 5 at 726-27 (indicating that Countrywide ("CHL") serviced the loan).

[6] *See* Docket No. 68, Ex. A at ¶ 7 ("In 2009, a settlement was reached with Countrywide Home Loans whereby the mortgage loan was rescinded. On August 31, 2009, Bank of America, acting through its agent and trustee Recontrust Company, N.A. recorded a reconveyance pursuant to the settlement agreement."); Docket No. 68, Ex. D at 655-657, 721-23 (settlement agreement and release).

[7] *See* Docket No. 75 at ¶ 5 ("Afterwards, I consulted with Simmons & Purdy with respect to the loan. Simmons & Purdy arranged for a rescission of the loan due to Truth in Lending Act violations. Under the rescission, I was required to make a payment of $300,193.98. To make this payment, I took out a loan from Union Bank.").

[8] *See* Docket No. 74-1, Ex. 9 at 19:9-25; Ex. 8 at 910-15 (record evidence suggesting Bank of America misapplied the full payoff as a "partial payment" which left the loan unsatisfied).

foreclosure process, when" Bank of America "did not have any lien or other interest in her property."[9]

### B. McFaul Files Suit

McFaul filed her complaint against Bank of America on November 6, 2012.[10]  On May 29, 2013, McFaul filed her first amended complaint ("FAC") adding a cause of action under the California Consumer Credit Reporting Agencies Act.[11]  Bank of America now moves for partial summary judgment as to McFaul's prayer for punitive damages arising from her intrusion upon seclusion and slander of title claims.[12]

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13]  The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a triable issue of material fact.[14]  If the moving party is the defendant, he may do so in two ways: by proffering "affirmative evidence that negates an essential element" of the nonmoving party's claim, or by demonstrating "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[15]  If met by the moving party, the burden of production then shifts to the non-moving party, who must then provide

---

[9] Docket No. 34 at ¶ 1.

[10] *See* Docket No. 1.

[11] *See* Docket No. 34.

[12] *See* Docket No. 67 at 11-12.

[13] Fed. R. Civ. P. 56(a).

[14] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15] *Celotex*, 477 U.S. at 331.

specific facts showing a genuine issue of material fact for trial.[16] The ultimate burden of persuasion, however, remains on the moving party.[17] In reviewing the record, the court must construe the evidence and the inferences to be drawn from the underlying evidence in the light most favorable to the nonmoving party.[18]

### B.     Punitive Damages

Pursuant to California Civil Code § 3294, "punitive damages may be awarded 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice.'"[19] Section 3294 further defines "oppression, fraud, or malice" as follows:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.[20]

---

[16] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Rule 56 provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (*quoting* Fed. R. Civ. P. 56(c)).

[17] *Celotex*, 477 U.S. at 330 (the "ultimate burden of persuasion" always "remains on the moving party").

[18] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that "all evidence must be construed in the light most favorable to the party opposing summary judgment"); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (On "summary judgment the inferences to be drawn from the underlying facts" must "be viewed in the light most favorable to the party opposing the motion." (citations and quotations omitted)).

[19] *Fausto v. Crediqy Servs. Corp.*, 598 F. Supp. 2d 1049, 1057 (N.D. Cal. 2009) (*quoting* Cal. Civ.Code § 3294); *see also* Cal. Civ. Code § 3294(a) ("In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.").

[20] Cal. Civ. Code § 3294(c).

4

Case No. 5:12-cv-05685-PSG
ORDER GRANTING-IN-PART BANK OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT PRECLUDING AN AWARD OF PUNITIVE DAMAGES

**C.     Request for Judicial Notice**

The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[21]

### III. DISCUSSION

**A.     Request for Judicial Notice**

The parties request the court take that judicial notice of various financial documents in this case.[22] The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[23] Neither party objects to the other's request for judicial notice. The authenticity of the financial documents is not in dispute and may be verified by resort to the public record. The court, however, will not rely on facts contained within the documents that reasonably may be subject to dispute. The requests for judicial notice therefore are GRANTED as to all documents.

**B.     Prayer for Punitive Damages**

This case centers on the nature and context of communications between Bank of America and McFaul. Although the parties quibble over how many calls were made and the general nature of the parties' communications, what is key to this motion is (1) whether or not the case law stands for the per se propositions Bank of America suggest and (2) in light of the record before the court, taken in the light most favorable to McFaul, summary judgment of no punitive damages is

---

[21] Fed. R. Evid. 201(b).

[22] *See* Docket Nos. 67-2 and 76.

[23] *See* Fed. R. Evid. 201(b).

warranted regarding the two claims that implicate punitives: intrusion upon seclusion and slander of title.

### 1. Intrusion Upon Seclusion

"A claim for intrusion upon seclusion contains two elements: 1) intrusion into a private place, conversation or matter, and 2) in a manner highly offensive to a reasonable person."[24]  "To show intrusion, a plaintiff must have 'an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source,' and the defendant must have 'penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff.'"[25]

Bank of America maintains that call volume, taken alone, cannot sustain a finding of punitive damages on McFaul's intrusion upon seclusion claim.  Bank of America urges the court to recognize what it identifies as a per se line drawn by this district's case law interpreting California law: collection calls are not enough to support a finding of punitive damages for privacy claims under California law.[26]

A fair read of both *Fausto* and *Sanchez* does not arc the clean lines Bank of America identifies.  In fact, Fausto is explicit in discussing circumstances "as a general matter," not as a per se rule.[27]  In any event, a reasonable jury must evaluate the threatening and harassing nature of

---

[24] *Thompson v. Chase Bank N.A.*, Case No. 09-cv-2143-DMS-POR, 2010 WL 1329061, at *4 (S.D. Cal. Mar. 30, 2010) (citing *Shulman v. Group W Productions*, 18 Cal. 4th 200, 232 (1998).

[25] *Id.* (citing *Shulman*, 18 Cal. 4th at 232).

[26] *See* Docket No. 67 at 13 ("As a general matter, in order for the issue of punitive damages to go to the jury, the courts have required plaintiffs to demonstrate clear and convincing evidence of two factors: (1) a large volume of calls and (2) that the calls were threatening and/or harassing in their substance.") (citing *Fausto*, 598 F. Supp. 2d 1049; *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1164 (N.D. Cal. 2007)).

[27] *Fausto*, 598 F. Supp. 2d 1049, 1057 (N.D. Cal. 2009) (citing *Sanchez*, 520 F. Supp. 2d at 1165) ("Viewing the evidence presented in the light most favorable to the opposing party, the credibility of the respective parties in the instant action creates a genuine issue of material fact as to whether taken together, the volume of telephone calls and the alleged threats constitute clear and

the calls in the "the context, conduct and circumstances surrounding" the intrusion.[28] Such a jury could conclude that the potential consequences of Bank of America's actions – foreclosure and eviction – rendered the actions sufficiently threatening or harassing without gratuitous yelling, cursing, or bullying.[29]

McFaul marshals record evidence of the following:

- In excess of one hundred calls from Bank of America over a period of three years.[30]

- Documents indicating that Bank of America had notice that McFaul's account was mischaracterized not being fully paid up.[31]

- Live communications between McFaul and Bank of America's representatives on at least six occasions. And, each time, McFaul was not reassured that her loan balance would be investigated further. Instead, she received automaton responses demanding that she pay up on what Bank of America continued to insist was an outstanding balance.[32]

- Thirty-nine occasions where Bank of America sent its representatives to McFaul's home to conduct inspections and delinquency resolution visits.[33]

- Threats to and, in fact, actual reporting of the paid off note as a past due obligation to credit reporting agencies.[34]

- Systematic failures in Bank of America's foreclosure and mortgage servicing processes and "sweatshop" like conditions where employees were unable to adequately review the documents they were signing.[35]

---

convincing evidence of malicious, oppressive or fraudulent conduct. Accordingly, defendants' motion for partial summary judgment is denied.").

[28] *Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 465 (9th Cir. 1997).

[29] This point is bolstered because neither *Fausto*, nor *Sanchez* involved the potential foreclosure of the debtor's residence. *See Fausto v. Credigy Servs. Corp.*, Case No. 5:07-cv-05658-JW, Docket No. 3 at 3 (N.D. Cal. Dec. 16, 2007) (describing a ten year old consumer debt); *Sanchez v. Client Servs., Inc.*, Case No. 5:06-cv-06280-PVT, Docket No. 1 at ¶ 20 (N.D. Cal. Oct. 5, 2006) ("Sometime prior to 2004, Mrs. Sanchez incurred a consumer debt for personal, family or household purposes, namely, a Discover Card account that she had used for purchases of personal food, clothing and shelter items in the approximate amount of $4,069.11.").

[30] Docket No. 75 at ¶ 6.

[31] *See supra* note 7.

[32] *See* Docket No. 74-2, Ex. 14 at 18:16-21:24, 22:18-24:15 (describing McFaul's exasperation with the calls).

[33] *See* Docket No. 74-3, Exs. 28; 29 at 197:22-198:24, 202:23-204:9.

[34] *See* Docket No. 74-3, Ex. 34 at 58; Docket No. 74-2, Ex. 14 at 63:2-13; Docket No. 75-7, Ex. 7.

7
Case No. 5:12-cv-05685-PSG
ORDER GRANTING-IN-PART BANK OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT PRECLUDING AN AWARD OF PUNITIVE DAMAGES

- Established procedures requiring Bank of America's employees to (1) demand payment, (2) confirm foreclosure status, and (3) advise the debtor that a negative credit would be reported and collection efforts would continue.[36]

- After discovering the error in McFaul's account not promptly informing her even though her home was scheduled to be foreclosed in the coming months.[37]

Even accepting Bank of America's strong disagreement with McFaul's characterization of the record, the court finds that the evidence before it requires a jury determination on McFaul's intrusion upon seclusion claim.

### 2.   Slander of Title

"Disparagement of title, also known as slander of title, 'occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss.'"[38] "Slander of title has four elements: (1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss."[39]

Bank of America believes punitive damages cannot lie, because even though it concedes its recordation of a notice of default "technically constitutes slander of title," it "fixed" the mistake "as soon as it was detected, which was right away."[40] Bank of America conceded that it recorded a notice of default on March 6, 2012 and executed a rescission of the notice on March 28, 2012.[41]

---

[35] *See* Docket No. 74-3, Ex. 31 at 10:19-11:3, 39:2-13, 43:11-21, 50:3-8, 52:19-53:9; Ex. 32 at 14:22-15:4, 16:8-12, 23:19-25; Ex. 33 at 32:1-8; Docket No. 76-3, Ex. 3.

[36] *See* Docket No. 74-2, Ex. 12 at 71:14-23; Ex. 13 at 7:3-9, 92:2-16.

[37] *See* Docket No. 74-3, Ex. 29 at 244:9-16; Docket No. 74-1 Ex. 10 at 98:13-99:14.

[38] *Stamas v. Cnty. of Madera*, Case No. 9-cv-0753-LJO-SMS, 2010 WL 2556560, at *6 (E.D. Cal. June 21, 2010) (*quoting Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 84 (1997).

[39] *Id.* (citing *Howard v. Schaniel*, 113 Cal. App. 3d 256, 263-264 (1980)); *see also Appel v. Burman*, 159 Cal. App. 3d 1209, 1214 (1984) (defining the elements of slander of title, which includes "publication, falsity, absence of privilege, and disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss")

[40] Docket No. 79 at 9.

[41] *See* Docket No. 68 at 8; Docket No. 67-2, Exs. B-D.

On April 5, 2012, the rescission of the notice of default was recorded in the official records of Santa Cruz County.[42]

McFaul counters that she clearly incurred pecuniary damages as a result of Bank of America slandering her title, in that she was forced to retain counsel to clear the cloud on her title. And, in light of the underlying circumstances of Bank of America's overall conduct, a reasonable jury could and should award punitive damages.

Here, the court agrees with Bank of America. Even with the factual predicate of McFaul's underlying claims, no reasonable jury could find punitive damages warranted on the basis of Bank of America's improperly issued notice of default. McFaul presents no evidence of oppression, malice, or fraud in Bank of America's decision to issue the notice. Nor does McFaul present any evidence that Bank of America did anything other than acting promptly to rescind the notice as soon as it learned of its error. While a reasonable jury could find that the notice was slanderous, it could not find any malice, fraud, or oppression surrounded that notice. Summary judgment is warranted on the issue of punitive damages pertaining to the slander of title claim.

**IT IS SO ORDERED.**

Dated: January 21, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[42] *See id.*

9
Case No. 5:12-cv-05685-PSG
ORDER GRANTING-IN-PART BANK OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT PRECLUDING AN AWARD OF PUNITIVE DAMAGES