CONSUMER LAW OFFICE OF WILLIAM E. KENNEDY
WILLIAM E. KENNEDY (CSB #158214)
(wkennedy@kennedyconsumerlaw.com)
2797 Park Avenue, Suite 201
Santa Clara, CA  95050
(408) 241-1000 -TEL
(408) 241-1500 – FAX

Robert David Humphreys (*Pro Hac Vice OBA #12346)*
david@hwh-law.com
Lucius James Wallace
luke@hwh-law.com (*Pro Hac Vice OBA #16070*)
Humphreys Wallace Humphreys, P.C.
9202 S. Toledo Avenue
Tulsa, OK  74137
(918) 747-5300 Telephone
(918) 747-5311 Facsimile

WILLIAM PURDY (CSB #96027)
LAW OFFICE OF SIMMONS & PURDY
2425 Porter Street, Suite 10
Soquel, CA 95073
(831) 464-6884
(831) 464-6886 fax
bill@@pamelaw.com

Attorneys for Plaintiff Patricia McFaul

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA MCFAUL, an individual<br><br>          Plaintiff,<br><br>     vs.<br><br>BANK OF AMERICA, N.A.<br><br>          Defendant. | Case No.: 12-cv-05685-PSG<br><br>**PLAINTIFF PATRICIA MCFAUL'S TRIAL BRIEF**<br><br>Trial Date: February 24, 2014<br>Time: 9:30 a.m.<br>Hon. Paul S. Grewal<br>Courtroom 5, 4th Floor |

Plaintiff's proof will establish that Bank of America, N.A.'s ("BANA") training, employee operating procedures, management controls, automated processes and internal financial incentives are aligned for maximum cost saving within each internal "line of business." ("LOB"), without due regard for current or former mortgage loan customers.  This organizational design created a corporate culture rife with conflict and avoidance of personal and financial responsibility. Bank representatives from the Originations, Payoffs, Collection-Loss Mitigation, Customer Service, and even the legal department, without exception, testified that some other LOB or outside vendor hired by the bank was responsible for what happened to Ms. McFaul. BANA has not offered a straightforward explanation of exactly what error the bank claims to have made. Each LOB and each employee at the bank who touched this account following payoff on July 28, 2009 failed Ms. McFaul and any consideration of her or her rights and interests.

BANA's conduct shows a conscious and deliberate disregard of the interests of others such that their conduct may be called willful or wanton. BANA's three year collection campaign and its initiation of foreclosure proceedings were not the result of a clerical error, but a series of choices made by BANA which disregarded Ms. McFaul's rights and interests.  One such choice made by the bank was to structure their processes such that rescinded loans could not be closed internally until a LOB accepted financial responsibility on its budget by "taking the hit."  No department stepped up to "take the hit" for Ms. McFaul's rescission, and thus the loan was not closed out and by process, returned to active collections.  The individuals who misapplied the final payoff were fully aware that without closing out the loan, collection attempts and ultimately foreclosure proceedings would follow. The choice was nevertheless made to apply the final payoff as a partial payment.

The failure of any LOB to accept responsibility subjected Ms. McFaul to well over 100 telephone calls, monthly statements claiming that she was delinquent and demanding payments,

"home inspections", negative credit reporting, and a barrage of unrequested modification paperwork. Ms. McFaul explained that she had refinanced and no longer had a loan with BANA approximately six times to the BANA representatives who called her, but in each case, her disputes were ignored because the persons she spoke with had no authority to investigate, and were trained only to read the banks flawed records showing a balance due.

In early 2012, Bank of America ultimately recorded foreclosure documents, including a Notice of Default and Election to Sell, despite the bank having years before re-conveyed the title. This was made possible by a virtually nonexistent foreclosure review process which had been the subject of an enforcement action by the Office of the Comptroller of the Currency ("OCC"). Although BANA was required by the OCC to reform its procedures, BANA failed to do so, leaving in place a "sweatshop" environment facing overwhelming working conditions in which supposed "Assistant Vice Presidents" signed hundreds of documents per day without any meaningful review.

After receiving the Notice of Default in March 2012, Ms. McFaul travelled to her local BANA branch for help. She was ignored. She next called BANA spending hours on the phone. She was told that BANA held title to her home, that foreclosure would continue, that her default was being reported to the credit agencies and that the burden was on her to get her true lienholder, Union Bank, to refinance the amount due BANA or rehire her rescission attorney if she disagreed.

First American Title officers who participated in the refinance that paid BANA in full attempted to bring to the bank's attention that it had no right or authority to collect. BANA exasperated the title officers at First American by refusing to take any action when they called to implore BANA to reverse course. Ms. McFaul was forced to re-hire her former lawyers to help her. Even after her lawyers demanded that the foreclosure action be cancelled, BANA took months to internally squabble over which LOB would pay the additional attorney fees incurred

by Ms. McFaul's rescission lawyers.  BANA never told Ms. McFaul that the NOD had been

rescinded, leaving Ms. McFaul to believe that the foreclosure process was still moving forward

until three weeks before the projected foreclosure sale date.  Even then, the Bank continued to

send out field inspectors to her home, send her payoff demands and a notice that her monthly

payment amount had been reset in June 2012. Her account was not written down to reflect a zero

balance until September 2012.  BANA never paid the attorney's fees it forced Ms. McFaul to

incur.

Ms. McFaul seeks actual and punitive damages for BANA's repeated and extensive

intrusion upon her personal rights.  These intrusions include making false threats of foreclosure,

intruding onto her residence, demanding money that was not owed, falsely claiming title to her

home, demanding that she cease payments to her true lien holder, ignoring her when she said that

she did not owe the bank, refusing to investigate its own records showing the reconveyance and

that her mortgage with BANA had been paid off all occurred while BANA employees and

officers had actual knowledge that the account had been settled, paid in full and the lien had been

released.

I.   Plaintiff's Claims Under the Rosenthal Act

Plaintiff's claims under the Rosenthal Fair Debt Collection Practices Act, California Civil

Code § 1788 *et seq*. are made under:

1.   1788.13(e), "No debt collector shall collect or attempt to collect a

consumer debt by means of the following practices:   (e) The false representation

that the consumer debt may be increased by the addition of attorney's fees,

investigation fees, service fees, finance charges, or other charges if, in fact, such

fees or charges may not legally be added to the existing obligation;"

2.   1788.17 1. "every debt collector collecting or attempting to collect a

consumer debt shall comply with the provisions of Sections 1692b to 1692j,

inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of

  a. Plaintiff's claims under § 1788.17 arise from its incorporation of

the federal Fair Debt Collection Practices Act 15 U.S.C. §§ 1692 *et seq.* and

specifically relies on the following sections:

  b. 1692e, "A debt collector may not use any false, deceptive, or

misleading representation or means in connection with the collection of any debt."

  c. 1692e(2), "The false representation of-- the character, amount, or

legal status of any debt."

  d. 1692e(10), "The use of any false representation or deceptive means

to collect or attempt to collect any debt or to obtain information concerning a

consumer."

  e. 1692f  "A debt collector may not use unfair or unconscionable

means to collect or attempt to collect any debt."

  f. 1692f(1) "The collection of any amount (including any interest,

fee, charge, or expense incidental to the principal obligation) unless such amount

is expressly authorized by the agreement creating the debt or permitted by law."

II. <u>Plaintiff's Claim for Intrusion Upon Seclusion</u>

"[T]he action for intrusion has two elements: (1) intrusion into a private place,

conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v.*

*Group W Productions, Inc*., 18 Cal.4th 200, 231 (1998).

 "The tort of invasion of privacy based on an intrusion does not require plaintiffs to prove

that private information about them has been disclosed to a third party. A plaintiff is harmed

when his or her privacy is invaded in an offensive manner without consent, not when information

gained from the intrusion is disclosed or published. . . .

 Intrusion involves a plaintiff's peace of mind and right to be left alone. The focus is on

whether the defendants penetrated 'some zone of physical or sensory privacy surrounding, *or obtained unwanted access to data about, the plaintiff.'" Id*. at 787-788.

III.    Plaintiff's Claim for Slander of Title

"The elements of a cause of action for slander of title are (1) a publication, which is (2) *without privilege* or justification, (3) false, and (4) causes pecuniary loss." *La Jolla Group II v. Bruce* 211 Cal.App.4th 461, 472, 149 Cal.Rptr.3d 716, 724 (Cal.App. 5 Dist.2012)(citing, *Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal.App.4th 1040, 1051, 93 Cal.Rptr.3d 457).

> "The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to [¶] (a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and [¶] (b) *the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.*" (Italics added.) California courts have adopted the Restatement definition of pecuniary damage for purposes of a slander of title cause of action. Accordingly, it is well-established that attorney fees and litigation costs are recoverable as pecuniary damages in slander of title... .

> we hold that at least in cases such as this one where title was disparaged in a *recorded* instrument, attorney fees and costs necessary to clear title or remove the doubt cast on it by defendant's falsehood are, by themselves, sufficient pecuniary damages for purposes of a cause of action for slander of title.

*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* 205 Cal.App.4th 999, 1030-1033, 141 Cal.Rptr.3d 109, 135 - 138 (Cal.App. 5 Dist.,2012)(internal citations removed)(italics in original).

Here, there is no real dispute that McFaul paid her attorneys $1,800 in legal fees to stop the wrongful foreclosure and that this amount has not been repaid to her by BANA despite more than one written request.

BANA will likely argue that the Court's ruling on summary judgment moots McFaul's claim for slander of title, even though this result was not sought by BANA in its motion. The argument goes that the summary judgment Order, determining no reasonable jury could find

1   grounds for punitive damages, prevents a finding of "malice." A finding by the jury of malice is

2   essential for McFaul to prevail on her slander of title theory in order to defeat the qualified

3   privilege.

4       At the summary judgment stage, BANA did not raise any argument or evidence that its

5   actions were privileged and therefore McFaul did not argue this point or cite the Court to the

6   evidence of BANA's malice.   BANA would be incorrect in asserting a lack of evidence to

7   support a jury finding of malice. "The malice necessary to defeat a qualified privilege is 'actual

8   malice' which is established by a showing that the publication was motivated by hatred or ill will

9   towards the plaintiff or by a showing that the defendant lacked reasonable ground for belief in

10   the truth of the publication and thereafter acted in reckless disregard of the plaintiff's rights

11   

12   (citations)." (*McGrory v. Applied Signal Technology, Inc.,* 212 Cal.App.4th 1510, 1538 (2013).

13       The evidence elicited from the testimony of the BANA Rule 30(b)(6) witness

14   demonstrates that BANA lacked reasonable ground for filing the Notice of Default:

15   

16   [Q:] Exhibit 15 is the Notice of Default that the bank

17   filed in March of 2012; is that right?
      A.   Yes.

18   Q.   And given what we've been through here
      today, is it your -- is it the bank's position that

19   there was a reasonable basis to file this Notice of
      Default on a deed of trust that had been

20   extinguished years ago?

21   A.   Reasonable basis?
      Q.   Was there a reasonable grounds to file

22   this paper with the clerk or the county recorder?
      A.   No.  We were wrong in filing this Notice

23   of Default.
      Q.   And -- and beyond being wrong, can you

24   think of any reasonable grounds that the bank held
      why it -- it could assert that it had the right to

25   file this on my client's property?

26   MR. KENNEY:  Asked and answered.  She just
      answered that.

27   BY MR. HUMPHREYS:
      Q.   Any reasonable basis for it?

28   A.   I don't think so.

(Deposition of Christina Kuo page 277 line 24-25 to 278 line 1 to 20)

BANA persisted in preparing multiple land record filings causing them to be made part of the official public record in Santa Cruz County, all in the face of actual knowledge no debt was owed, its lien was released and after being told these same things numerous times. The issue of the existence of malice sufficient to overcome the qualified privilege is one for jury determination.

IV.   Plaintiff's Claim under the California Consumer Credit Reporting Act

Plaintiff's claim under the CCCRAA, Civil Code § 1785.1 *et seq.* is made under:

1.   Cal. Civil Code § 1785.25(a)  "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

V.   Punitive Damages

In pertinent part, and not to be construed as a direct quote, Cal. Civil Code § 3294(c) provides:

(1) "Malice" means conduct which is…or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

VI.   BANA'S Stipulations of Liability

The theory of the defense appears to be to make limited, strategic admissions in an effort to convince the Court to unduly limit the Plaintiff's ability to present the moral force of her evidence.  To the extent that BANA argues that its admissions render any part of the body of evidence demonstrating its numerous unfair, deceptive and malicious acts inadmissible, Plaintiff objects. Courts are generally in agreement that in a criminal matter, a party may not stipulate to evidence in such a way as to deny the objecting parties ability to present a persuasive and moving case.  In this context the 9th Circuit has stated:  "Appellant next contends that the trial court erred in failing to require the state to accept his stipulation with respect to the victim's treating physician's testimony. However, the state is entitled to prove its case free from being forced to 'stipulate the evidence away' and we conclude that the trial court's ruling was not unreasonable." *Thomas v. McGrath,* 132 Fed.Appx. 709, 710, 2005 WL 1189616, 1 (9th Cir. 2005)*(citing, Old Chief v. United States,* 519 U.S. 172, 189, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).

    This uniformity or clarity is not to be found in civil cases.  "In short, there is no clear rule governing offers to stipulate to liability in civil cases.  *In re Air Crash Over the Taiwan Straits*, 331 F.Supp. 2d 1176, fn. 60 (C.D. Cal. 2002).  This is a matter left to the sound discretion of the trial court. To date, the 9th Circuit has not expressly addressed the applicability of this principal to a civil trial, but the policy supporting an award of punitive damages is analogous to a criminal proceeding, by virtue of the higher standard of proof required and the reprehensibility factor common to both.  There is no reason to believe that 9th Circuit would prevent a criminal defendant whose very freedom is at risk from being able to stipulate the evidence away and thereby deprive the prosecution from making its best case for the longest criminal penalty possible and not believe that the same would apply to a civil defendant who has so much less at stake.  The clearest decision on this issue was made by the District of Maryland which stated that a defendant should not be able to "deprive the plaintiff of the 'moral force' of some of her most important evidence."  *Briggs v. Dalkon Shield Claimants Trust*, 174 F.R.D. 369, 376 (D. Md.

1997).  The Maryland District Court sets out four factors to consider before forcing a party to

accept a stipulation.  These factors include:  "(1) the importance of the facts in question to the

case of the party opposing the stipulation (for example, is the fact of modest relevance, or central

to the case); (2) the nature of the stipulation, and whether it is qualified or conditional;  (3) the

scope of the proposed stipulation (stipulation to a specific fact or item of evidence as opposed to

a stipulation to one or more elements of a claim or defense); and (4) the impact of the stipulation,

if ordered, on the burden of persuasion borne by the party resisting the stipulation."  *Id* at 373.

These factors should be used whether the Court is forcing a party to accept a stipulation under

Rule 16 as part of the pretrial statement or in ruling on the admissibility of evidence under

Federal Rule of Evidence 403 based on the probative value of the evidence versus the evidence

being cumulative of the stipulation.  *Id.*

The stipulations offered by Defendant in the present matter should not be utilized to

deprive Ms. McFaul of the moral force of her case.  Further, such evidence is relevant to several

issues in the case, including 1) the amount of actual damages suffered by Ms. McFaul , 2) the

availability and amount of punitive damages under Plaintiff's Intrusion Upon Seclusion claim, 3)

the amount of civil penalty to be awarded under 15 U.S.C. § 1692k, as incorporated into the

Rosenthal Act by Civil Code § 1788.17, 4) the amount of punitive damages to be awarded under

Civil Code § 1788.30(b), 5) the amount of punitive damages to be awarded under the California

Consumer Credit Reporting Agencies Act, Civil Code § 1785.31(a)(2)(B), and 6) the viability of

BANA's claim that its wrongful recording of the Notice of Default was not done with "malice"

and therefore was privileged.

Respectfully submitted,

HUMPHREYS WALLACE HUMPHREYS, P.C.


By: ___/s/ David Humphreys_____
       Robert David Humphreys, OBA #12346
       Lucius James Wallace, OBA # 16070
       9202 S. Toledo Avenue
       Tulsa, Oklahoma 74137
       (918) 747-5300 / (918) 747-5311 fax
       **PRO HAC VICE ATTORNEYS**
       **FOR PLAINTIFF**

       William E. Kennedy (CSB #158214)
       CONSUMER LAW OFFICE OF WILLIAM E.
       KENNEDY
       2797 Park Avenue, Suite 201
       Santa Clara, CA  95050
       (408) 241-1000 -TEL
       (408) 241-1500 – FAX
       **ATTORNEY FOR PLAINTIFF**